## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re

    BENCHMARK MECHANICAL
    CONTRACTORS, INC.,

           Debtor.

No. 04-20127
Chapter 7

---

BENCHMARK ENGINEERING, LLC
and J.T. HANNAH, LLC,

    Plaintiffs,

vs.

MARY FOIL RUSSELL, Trustee;
RICHARD D. SPEARS; and
KATHY SPEARS,

    Defendants.

Adv. Pro. No. 04-2006

## M E M O R A N D U M

APPEARANCES:

> MARK S. DESSAUER, ESQ.
> HUNTER, SMITH & DAVIS, LLP
> Post Office Box 3740
> Kingsport, Tennessee 37664-0740
> *Attorney for Benchmark Engineering, LLC and J.T. Hannah, LLC*
>
> JASON W. BLACKBURN, ESQ.
> BEARFIELD & MCCLELLAN
> Post Office Box 4210 CRS
> Johnson City, Tennessee 37602
> *Attorney for Mary Foil Russell, Trustee*

MARCIA PHILLIPS PARSONS
UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding, the plaintiffs seek specific performance of certain prepetition sales contracts with the debtor or alternatively, replevin of the personalty that is the subject of the contracts. The defendant chapter 7 trustee counterclaims for the avoidance and recovery of certain prepetition transfers by the debtor to the plaintiffs as preferential transfers under 11 U.S.C. §§ 547 and 550 or alternatively, as fraudulent conveyances under §§ 548 and 550. Presently pending before the court is the plaintiffs' motion for summary judgment on all claims, including the trustee's counterclaims. For the reasons that follow, the motion will be granted. This is a core proceeding. *See* 28 U.S.C § 157(b)(2)(C), (F), (H) & (O).

I.

The debtor Benchmark Mechanical Contractors, Inc. filed for bankruptcy relief under chapter 11 on January 16, 2004. Shortly, thereafter, on January 23, 2004, the case was converted to chapter 7. In the interim, the plaintiffs Benchmark Engineering, LLC and J.T. Hannah LLC ("Hannah") commenced the present adversary proceeding against the debtor and its shareholders, Richard and Kathy Spears. In addition to specific performance and replevin, the plaintiffs originally sought to enjoin the defendants from using or disposing of the personal property that is the subject of this proceeding, until such time as the issue of ownership was resolved. Simultaneously with the filing of this adversary, the plaintiffs also filed a motion for relief from the automatic stay in the bankruptcy case in order to take possession of the personalty. After the bankruptcy case was converted to chapter 7, the trustee Mary Russell was substituted for the defendant debtor. Thereafter, the parties entered into an agreed order which permitted the plaintiffs to take possession of the personalty upon the tendering of a specified escrow deposit with all claims to the properties preserved.

2

As set forth in the complaint and admitted in the answer, the debtor was engaged in the business of providing mechanical contracting and related services to primarily industrial customers from the debtor's principal business office in Kingsport, Tennessee and four plant sites at various locations. On June 10, 2003, due to the debtor's ongoing financial problems, the defendants and Hannah entered into a Memorandum Agreement that set forth a framework for Hannah to provide management consulting services to the debtor in return for an ownership interest in the debtor's business. Specifically, the Agreement provided the following: Hannah would form Benchmark Engineering with Robert Hornsey as the single member; Hannah would own 800 of the 1000 units of Benchmark Engineering and contribute $12,000 as consideration; the debtor would own 100 units and contribute as consideration the use of certain equipment and certain real property leased from the Spears; the Spears would own 100 units and contribute as consideration the use of the Benchmark name; the debtor would pay its obligations according to a priority scheme set forth in the Memorandum Agreement; Hannah would designate Hornsey to serve as chief manager of Benchmark Engineering and Hannah would be paid $6,000 monthly for its services; the Spears would serve as administrative officers of Benchmark Engineering but would not be authorized to bind it contractually; the Spears would receive $6,000 monthly from Benchmark Engineering but would not receive any compensation or benefits from the debtor; the debtor would not enter into any agreements requiring the performance of services or which would impose any financial obligation on the debtor without the consent of Benchmark Engineering but would enter into such agreements when requested by Benchmark Engineering; the Spears would grant Hannah a first option to purchase for $150,000 the real property they leased to the debtor and ninety percent (90%) of their stock in the debtor for $1,800; and finally, Hannah would have until July 31, 2003, to evaluate the debtor's business and

3

determine whether to proceed with the terms of the Memorandum Agreement.

The plaintiffs' complaint further alleges that consistent with the foregoing agreement, Benchmark Engineering commenced purchasing equipment from the debtor in various sales transactions beginning in September 2003. Specifically, the plaintiffs set forth six such transactions in various amounts totaling $172,337.00, which are alleged to represent the sale of certain tools and equipment at the debtor's business locations. The plaintiffs attach to the complaint copies of the bills of sale and related documentation included cancelled checks evidencing payment in full of the specified amounts. The plaintiffs allege that notwithstanding the foregoing, the defendants refuse to turnover possession of the equipment.

In their answer, the defendants admit that bills of sale exist that "purport" to evidence the various sales, but specifically deny that the equipment was sold or that the debtor received the full consideration reflected upon the bills of sale. In the amended answer filed by the trustee, she asserts that the membership interest in both of the plaintiffs is held solely by Robert Hornsey, that Hornsey and the plaintiffs are all insiders of the debtor as that term is defined in 11 U.S.C. § 101(31), and that from September 2003 until the debtor's chapter 11 petition was filed, the debtor made twenty payments to the plaintiffs and Hornsey which are avoidable and recoverable as preferential or fraudulent transfers.

Presently before the court is the plaintiffs' summary judgment motion filed May 31, 2005, and supported by the affidavit of Robert Hornsey. The plaintiffs assert that the bills of sale, signed by defendant Richard Spears on behalf of the debtor, are enforceable contracts under Tennessee law, and that therefore, the personalty sold thereunder is property of Benchmark Engineering rather than the

4

debtor or the bankruptcy estate as a matter of law.[1]  As to the trustee's counterclaims, the plaintiffs

assert that any claim against Hornsey individually should be dismissed because he is not a party to this

action; the plaintiffs are not insiders so the trustee is not entitled to the benefit of the extended

preference period under 11 U.S.C. § 547(b)(4)(B); due to the "earmarking doctrine," payments by

the debtor to the plaintiffs were not property of the estate, an essential element to recovery under §

547(b); and finally, that the new value defense of 11 U.S.C. § 547(c)(4) protects the overwhelming

majority of the transfers from recovery.

On July 13, 2005, the trustee filed a response in opposition to the plaintiffs' summary

judgment motion, her own affidavit, and the affidavits of defendants Kathy and Richard Spears.

According to the trustee, issues of material fact exist which preclude summary judgment. Recently,

on August 8, 2005, the plaintiffs filed a reply.


II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary

judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The court is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby,*

---

[1] Although the bills of sale were executed between Benchmark Engineering and the debtor, the payments were made by Hannah, the sole owner of Benchmark Engineering.  Nonetheless, there appears to be no reason to distinguish between Hannah and Benchmark Engineering for purposes of relief on the plaintiffs' claim.

*Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2520-11 (1986)).  "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52.  In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party.  *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003).  The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.  The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Id.* at 442-43 (citations omitted).  "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate."  *Braithwaite v. Timken Co.,* 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 349 (6th Cir. 1998)).

## III.

The court will first address whether the plaintiffs are entitled to summary judgment of their case in chief.  Tennessee law governing the enforceability of contracts for the sale of goods is not in dispute.  The Uniform Commercial Code ("UCC") on sales is found at *Tennessee Code Annotated* §§ 47-2-101 to 725.  The statute of frauds provision, *Tenn. Code Ann.* § 47-2-201(1), provides as

6

follows:

> [A] contract for sale of goods for the price of five hundred dollars ($500) or more is
> not enforceable by way of action or defense unless there is some writing or record
> sufficient to indicate that a contract for sale has been made between the parties and
> signed by the party against whom enforcement is sought or by his authorized agent
> or broker. A writing or record is not insufficient because it omits or incorrectly states
> a term agreed upon but the contract is not enforceable under this paragraph beyond
> the quantity of goods shown in such writing or record.

A contract not satisfying the above requirements, but which is otherwise valid, is enforceable "with

respect to goods for which payment has been made and accepted or which have been received and

accepted." *Tenn. Code Ann.* § 47-2-201(3)(c).

In addition these statutory requirements, Tennessee common law provides that a contract

"must result from a meeting of the minds of the parties in mutual assent to the terms, must be based

upon a sufficient consideration, free from fraud or undue influence, not against public policy and

sufficiently definite to be enforced." *Johnson v. Cent. Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn.

1962) (citing *Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry.*, 134 S.W. 613, 615

(Tenn. 1911)).

> In determining mutuality of assent, courts must apply an objective standard based
> upon the parties' manifestations. A determination of the parties' intentions generally
> involves a question of law appropriate for summary judgment provided that the
> moving party has established the absence of a genuine issue as to any material fact.

*Staubach Retail Services-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005)

(internal citations omitted).

In this regard, Hornsey states in his affidavit that in 2003 he formed both of the plaintiffs as

Tennessee limited liability companies, and that during the relevant time period, he was the sole

member and an officer of each. According to Hornsey, Benchmark Engineering was formed for the

7

purpose of acquiring the assets and business of the debtor while Hannah was formed to act as a

consulting company. Hornsey explains that the purpose of the June 10, 2003 Memorandum

Agreement "was to set forth a plan for Benchmark Engineering and J.T. Hannah to attempt to turn

around the business of the Debtor and then for Benchmark Engineering to acquire the assets of the

Debtor. If these companies were successful in turning around the Debtor's business, then the Spears

would acquire a minority interest in Benchmark Engineering." Hornsey continues in his affidavit that

due to the debtor's financial problems, this plan never developed, although Benchmark Engineering

did commence purchasing used equipment, tools, and machinery from the debtor as set forth in the

complaint.

> On each occasion . . . , the purchase price for the tools and equipment was
> determined by first taking the original purchase price paid or the original retail price
> and then taking 50% of that amount. Mr. Spears and I reached an agreement that
> 50% of the original purchase price represented a fair price for used tools and used
> equipment. The purchase price for the Bobcat and attachments was determined by
> an appraisal.
>
> Each of the Bills of Sale contained within Collective Exhibit No. 2 were signed
> by Richard Spears who at the times during my business relationship with the Debtor
> was and acted as the President of the Debtor. Also, on each occasion, the purchase
> price for the tools, equipment and machinery was delivered to Mr. Spears and
> thereafter deposited in the Debtor's bank account.

(Hornsey Affidavit; ¶¶ 11, 12.)

The bills of sale referenced in Hornsey's affidavit, dating from September 4 to September 23,

2003, recite the following:

BILL OF SALE
USED PROPERTY – SOLD "AS IS/WHERE IS"

KNOW ALL MEN BY THESE PRESENTS that for a good and valuable
consideration, the receipt and sufficiency of which is hereby acknowledged,
BENCHMARK MECHANICAL CONTRACTORS, INC., the Grantor, does hereby

8

grant, sell, transfer, and deliver unto BENCHMARK ENGINEERING, L.L.C., the
Grantee, and to its successors and assigns, the following described personal property,
to wit:

SEE EXHIBIT A [*] FOR PROPERTY LISTING

To have and to hold the aforesaid personal property unto the said Grantee forever and
the Grantor hereby covenants to and with the said Grantee that: (1) it is the lawful
owner of the aforesaid personal property; (2) such personal property is free from all
liens and encumbrances; (3) it has a good right and full authority to sell and convey
the same as herein set forth; and (4) it will forever warrant and defend title thereto
against the lawful claims and demands of all persons whomsoever. . . .

The bills of sale are signed by Richard Spears as president of Benchmark Mechanical Contractors and

his signature is in each instance notarized. Attached to each bill of sale is a list of tools and equipment

being sold along with the price for each item. Also attached are checks indicating contemporaneous

payment to the debtor and deposit of each check into the debtor's bank account. Based on these

documents and Hornsey's affidavit, the plaintiffs assert that they had enforceable contracts against

the debtor for the purchase of the listed personalty, free and clear of any claim of the trustee.

In response, the trustee concedes that Richard Spears signed the bills of sale but asserts that

the following issues of fact exist which preclude summary judgment: whether Mr. Spears had the

capacity to represent the debtor as a signatory, whether Hornsey exerted undue influence over the

debtor, whether there was mutual assent to the purchase price or specific property being sold, and

whether the consideration paid was reasonable and sufficient. With regard to Mr. Spears' capacity

to sign the bills of sale, the trustee cites the following language in the Memorandum Agreement:

"[The debtor] shall not, without prior written consent of [Benchmark Engineering], enter into or

accept any new agreement requiring the performance of services or which would impose any financial

obligation on [the debtor]. [The debtor] will, however, enter into such agreements when requested

to do so by [Benchmark Engineering]." The trustee argues that this language gave Hornsey complete

9

control of the debtor's ability to enter into contracts and could have required the debtor to sell the property at any price. As further evidence of control, Hornsey's alleged undue influence, and the lack of a firm contract, the trustee relies on her personal affidavit and those of the Spears.

In her affidavit, the trustee states that during the debtor's chapter 7 case she has maintained the debtor's books and records and that one document therein is a contract between the debtor and Nextel for cellular phone service, signed by Hornsey as "President." A copy of this contract, dated September 16, 2003, is attached to the trustee's affidavit.

Richard Spears states in his affidavit that "[a]s part of [the Memorandum Agreement], Mr. Hornsey essentially assumed control of [the debtor], either individually or through his related entities." Mr. Spears also states that "Mr. Hornsey began operating [the debtor] in January 2003" and furthermore that:

> The bills of sale were blank as to purchase price when I executed them, and Mr. Hornsey later decided what amounts should be filled in the blanks.
>
> Mr. Hornsey told me that as a condition of him depositing money into Benchmark's accounts for operation, that I would be required to sign the bills of sale.
>
> The price of the tools was never discussed, and Mr. Hornsey never claimed that the amounts that he would contributed [sic] would be related to the tools that he wanted to purchase. In fact, when I signed the bills of sale, there was no discussion or indication of what tools were supposedly being purchased.

(R. Spears Affidavit; ¶¶ 17-19.)

In her affidavit, Kathy Spears echos her husband's statements as the Hornsey's involvement in the debtor's business. She states that "Hornsey started working at [the debtor] in January 2003," where "[h]e was introduced to the employees as a 'partner' in [the debtor]," and that he "was the primary manager of [the debtor] beginning in January 2003," managing the business "from Mr.

Spears' former office in Kingsport." According to Mrs. Spears, beginning in February or March

2003, Hornsey had the authority to write checks, to decide which creditors would be paid and when,

to hire and fire employees and to determine which contracts the debtor would accept or terminate.

She states that Hornsey also contacted the debtor's customers and made presentations on the debtor's

behalf, as well as told the debtor's employees, customers, and vendors that he was the debtor's

owner, and made the decision for the debtor to file chapter 11. In contrast to Hornsey, Mrs. Spears

states that she and her husband were "only involved in [the debtor] peripherally after January 2003,

and did not maintain a presence in the Kingsport office."

In anticipation of the trustee's control arguments, Hornsey's affidavit disputes the Spears'

assertions. He states that his role with the debtor was strictly as a consultant and denies that he,

individually or through the plaintiffs, had or exercised any control over the business or operations

of the debtor, including whether to dispose of assets. Hornsey states that he was not an authorized

signatory of the debtor's bank account, that he had no authority to hire or fire the debtor's

employees, and that neither he, Benchmark Engineering, nor Hannah was ever an officer or director

of the debtor, a shareholder, a general partner of the debtor, or a partnership in which the debtor was

a partner. He further asserts that the Spears were the officers and control persons of the debtor at

all times during his business relationship with the debtor and that the debtor's decision to sell assets

to Benchmark Engineering pursuant to the bills of sale was made by Richard Spears, the debtor's

president.

After an evaluation of the record in light of the law on this issue, it is clear that the bills of

sale, along with the cancelled checks and Hornsey's affidavit, present a prima facie case for summary

judgment in the plaintiffs' favor on the issue of the ownership of the goods set forth in the bills of

11

sale. As required by *Tenn. Code Ann.* 47-2-201(1), the plaintiffs have submitted proof of a writing which provides for the sale of goods, signed by the president of the entity to be bound, and payment of the specified consideration. The only question is whether the affidavits presented by the trustee create a genuine issue of material fact precluding summary judgment.

The first issue raised by the trustee is that Richard Spears did not have the capacity to bind the debtor due to the language of the Memorandum Agreement and the control over the debtor exercised by Hornsey. The Memorandum Agreement, however, did not by its terms transfer complete control of the debtor to the plaintiffs or Hornsey. Instead, it only gave Benchmark Engineering control over new contracts which "requir[e] the performance of services or which would impose any financial obligation on [the debtor]." The bills of sale do not fall within either of these categories. Hornsey states in this affidavit that the Spears own 100% of the debtor's stock and that Richard Spears is the president of the debtor. The Spears do not contradict these statements in their affidavits. While the trustee's affidavit indicates that on one occasion Hornsey held himself out as president of the debtor, there is nothing in the record indicating that Hornsey had been appointed or elected president by the debtor's board or that the Spears did not retain complete ownership of the debtor, with the inherent power to sell its assets, notwithstanding Hornsey's alleged management of the debtor's day-to-day affairs. *See Tenn. Code. Ann.* § 48-22-102 (upon approval of its shareholders, a corporation may sell all or substantially all of its property). Accordingly, the court rejects the trustee's assertion that a genuine issue exists as to whether Richard Spears had the capacity to represent the debtor as a signatory.

With respect to the issue of whether Hornsey exerted undue influence over the debtor such that the sales should be nullified, the court again assumes for purposes of plaintiffs' motion that

12

Hornsey was managing the debtor as the Spears state in their affidavits. As to whether this created

a fiduciary relationship:

> No Tennessee Supreme Court decision has been found directly embracing or
> rejecting the possibility that Tennessee law would recognize fiduciary duties in a party
> other than a shareholder, officer or director that exercises dominion or control over
> a corporation. But the Tennessee cases cited above demonstrate that, on unusual
> facts, the exercise of domination or control in the context of a business relationship
> by a party not otherwise a fiduciary can give rise to fiduciary duties under Tennessee
> law.

*Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781, 811 (Bankr. M.D. Tenn. 2005) (Lundin, J.).

Assuming that the relationship between the plaintiffs and/or Hornsey and the debtor was a fiduciary

one, "[t]ransactions between persons in a confidential relationship are not automatically invalid." *Sec.*

*Fed. Sav. and Loan Ass'n of Nashville v. Riviera, Ltd.,* 856 S.W.2d 709, 714 (Tenn. App. 1992).

Rather, "[t]he relationship of trust and confidence between persons in a fiduciary relationship . . .

commands the close attention of the courts to the fairness of any transaction between them." *Id.*

"The factors which are important in determining whether a transaction is fair include: (1) whether the

fiduciary made a full and frank disclosure of all relevant information within his possession; (2)

whether the consideration was adequate; and (3) whether the principal had independent advice before

completing the transaction." *Id.* (internal citation omitted).

Applying this criteria to the affidavits submitted by the trustee in opposition to the plaintiffs'

summary judgment motion, it must be noted that there are no statements therein that the plaintiffs or

Hornsey misled or withheld relevant information from the Spears in connection with the sale

transactions, that the consideration paid by the plaintiffs was inadequate, that the Spears and the

debtor would have benefitted from obtaining independent advice before completing the transactions,

or that the plaintiffs exercised *undue* influence or took unfair advantage of the debtor. The only

13

representation in this regard is the statement in Richard Spears' affidavit that "Mr. Hornsey told me that as a condition of him depositing money into [the debtor's] accounts for operation, that I would be required to sign the bills of sale." The trustee argues that this statement establishes that "Richard Spears was incapable of refusing to comply with Hornsey's demand that the bills of sale be executed" and that "Spears was unable to refuse due to the precarious financial condition of [the debtor] and its need for immediate cash." This conclusion, however, is not supported by Mr. Spears' affidavit, and there is no evidence that Hornsey or either of the plaintiffs took any action which would have prevented the Spears from refusing to sell to the plaintiffs or which would have prevented the debtor from borrowing money from another source. Hornsey's alleged control of the debtor, even coupled with the debtor's financial distress, provides no basis for invalidating an otherwise valid contract, absent evidence of fraud, misrepresentation, or some indication that Hornsey used his position to obtain an unfair advantage over the debtor. No such evidence having been presented, the trustee's mere allegation of undue influence is insufficient to create an issue of fact.

Regarding the trustee's argument that an issue of fact exists as to whether there was mutual assent to the purchase price and property being sold, the trustee cites Richard Spears' affidavit stating that "[t]he price of the tools was never discussed . . . [and] there was no discussion or indication of what tools were supposedly being purchased." However, neither Mr. nor Mrs. Spears contradict Hornsey's statement that each time Mr. Spears signed a bill of sale, "the purchase price for the tools, equipment and machinery was delivered to Mr. Spears and thereafter deposited in the Debtor's bank account." As previously noted, a contract which omits essential terms is enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted." *Tenn. Code Ann.* § 47-2-201(3)(c). "The parties, if they so intend, can conclude a contract for sale

14

even though the price is not settled." *Tenn. Code Ann.* § 47-2-305(1). Accordingly, the court does

not conclude that an issue of fact has been presented.

Finally, in this regard, is the trustee's assertion that summary judgment is inappropriate

because an issue remains as to whether the consideration paid was "reasonable and sufficient." As

previously noted, the Spears' affidavits do not address the sufficiency or reasonableness of the

consideration paid by the plaintiffs, and the trustee has otherwise presented no evidence challenging

the adequacy of the consideration. Faced with the plaintiffs' summary judgment motion, the trustee

must come forward with some evidence showing there is a genuine issue of fact and may not rest

upon mere allegations or general denials. No such evidence having been offered, the mere raising of

the issue is insufficient to create as issue of fact. Based upon all the foregoing, this court concludes

that there are no genuine issues of material fact and that plaintiffs are entitled to summary judgment

on the issue of whether they had enforceable sales contracts with the debtor.

The court turns next to the trustee's counterclaim for the avoidance and recovery of certain

prepetition payments by the debtor to Hornsey and the plaintiffs as preferences or alternatively, as

fraudulent conveyances. Hornsey states in his affidavit that the payments the trustee is seeking to

recover were repayments for the debtor's receivables purchased by Benchmark Engineering. He

describes the transactions as follows:

> J.T. Hannah would issue a check to the Debtor for the receivables or invoice
> purchased less a 1% discount. The documentation regarding the sale of the invoices
> to Benchmark Engineering were simultaneously signed by the Debtor and/or delivered
> to Benchmark Engineering. The checks for the purchase of the invoices were then
> deposited by the Debtor in its bank account at Bank of Tennessee and as stated, used
> for working capital purposes. The Debtor, through its employees, were keeping track
> of the receivables that Benchmark Engineering was purchasing as other receivables
> of the Debtor were being financed with Bank of Tennessee. When a check was
> received by the Debtor for a receivable that Benchmark Engineering purchased, the

check was deposited in the Debtor's Bank of Tennessee bank account and a check in the same amount was then immediately written to J.T. Hannah or Benchmark Engineering.

(Hornsey Affidavit; ¶ 16.) Hornsey attaches to his affidavit copies of checks from Hannah to the debtor in payment for the receivables along with corresponding invoices.

In their summary judgment motion, the plaintiffs allege that they are entitled to summary judgment because, due to the "earmarking" doctrine, the payments were not property of the debtor, required elements of both §§ 547 and 548 of the Bankruptcy Code.  The plaintiffs also allege that Hornsey's affidavit, which indicates that Hannah paid the debtor 99% of the invoices' face value, establishes that the debtor received reasonably equivalent value in exchange for the transfers at issue, thus defeating the trustee's § 548 claim.  Alternatively, the plaintiffs contend that they are entitled to partial summary judgment on the issue of whether they were insiders, which would preclude liability for transfers during the extended preference period, and that they are entitled to the new value defense of § 547(c)(4) for the majority of the debtor's transfers.  Lastly, the plaintiffs assert that any claim by the trustee against Hornsey individually should be dismissed because he is not a party to this adversary proceeding.

The trustee's response in opposition to the plaintiffs' summary judgment motion does not address any of these arguments, with the exception of the plaintiffs' insider status.[2]  Because the trustee does not dispute that the plaintiffs are entitled to summary judgment on the issues of whether the payments were property of the debtor and whether reasonably equivalent value was given in

---

[2] The trustee's response also includes the argument that the transfers of the debtor's tools and equipment are preferential transfers.  This allegation was not in the trustee's counterclaim and cannot now be asserted in response to a summary judgment motion.  *See* Fed. R. Civ. P. 12(b) and 13(a); Fed. R. Bankr. P. 7012 and 7013.

16

exchange for the transfers, inherently factual determinations which wholly defeat preference and fraudulent conveyance recovery, plaintiffs will be granted summary judgment on the trustee's counterclaims.

## IV.

Based on the foregoing, an order will be entered contemporaneously with the filing of this memorandum opinion granting the plaintiffs' motion for summary judgment.

FILED: August 18, 2005

BY THE COURT

/s/ Marcia Phillips Parsons
MARCIA PHILLIPS PARSONS
UNITED STATES BANKRUPTCY JUDGE